NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000333
27-DEC-2013
09:25 AM

CAAP-11-0000333

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

SS&M AUTO PARTS, LLC,
a Hawaii limited liability company,
formerly known as American Recycling,
Plaintiff-Appellant,
v.
SAND ISLAND BUSINESS ASSOCIATION,
a Hawaii nonprofit corporation,
ISLAND WORKS, INC., a dissolved Hawaii corporation,
MICHAEL CHOCK, doing business as Mokihana Builders,
Defendants-Appellees,
and
DOES 1-50, Defendants.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 05-1-0936-05)

MEMORANDUM OPINION
(By: Nakamura, C.J., and Leonard and Ginoza, JJ.)

In this appeal arising out of a commercial arbitration, Plaintiff-Appellant SS&M Auto Parts, LLC (SS&M) appeals from orders and a Judgment entered by the Circuit Court of the First Circuit (circuit court)[1] on March 10, 2011, that *inter alia* confirmed a Final Arbitration Award (Arbitration Award) dated April 28, 2010, as clarified by an "Order Granting in Part Respondent Sand Island Business Association's Motion For Clarification, Modification and/or Correction of Final Arbitration Award" (Arbitrator's Clarifying Order) issued on May

_____

[1] The Honorable Patrick W. Border presiding.

19, 2010. The Arbitration Award and Arbitrator's Clarifying Order are referred to collectively as "Arbitration Decision."

On appeal, SS&M contends that (1) the arbitrator failed to decide what was submitted to him and thus the Arbitration Decision was incomplete; (2) the arbitrator decided what was not submitted to him and exceeded the scope of his authority; and (3) the Arbitration Decision as it relates to a rent trust fund was not confirmable.

SS&M's appeal in essence challenges the circuit court's confirmation of the Arbitration Decision in favor of Defendant-Appellee Sand Island Business Association (SIBA). In the circuit court, SS&M had sought to vacate the Arbitration Decision pursuant to Hawaii Revised Statutes (HRS) § 658A-23 (Supp. 2012).

For the reasons discussed below, we affirm.

## I. Background

SIBA holds a Master Lease for Sand Island Industrial Park (Industrial Park). In 1993, SIBA subleased a portion of the Industrial Park, known as Lot No. 44 (Lot 44), to Island Softworks, Inc. (Island Softworks), now dissolved, represented by owner Defendant-Appellee Michael Chock (Chock). Six years later, in 1999, Chock and William Mahas (Mahas), who apparently controlled SS&M at the time, entered into an agreement to assign the sublease of Lot 44 to SS&M, which was subject to SIBA's approval. Chock granted SS&M possession of Lot No. 44. However, the sale and transfer of the sublease failed to be executed, apparently due to SIBA withholding consent because of concerns that SS&M was controlled by Mahas.

In 2000, SIBA filed suit against Island Softworks and Chock, seeking to terminate the sublease and to divest Island Softworks, Chock and any other person or entity claiming through them of all interest in Lot 44 (2000 Lawsuit). Although SS&M was not named as a party to the 2000 Lawsuit, the complaint identified as doe defendants any persons or entities to whom Island Softworks and/or Chock had conveyed interests in Lot 44.

In order to resolve the 2000 Lawsuit, SIBA, Island

2

Softworks/Chock and SS&M entered into a Settlement Agreement dated December 19, 2002. The Settlement Agreement provided *inter alia* that Chock agreed to sell the sublease to SS&M with closing of the sale to occur within a specified time period, that SIBA agreed to provide written consent to the assignment within a specified time period, and that SS&M agreed to various covenants related to its ownership and management, its operations at the Industrial Park, and its procurement of pollution liability insurance. The Settlement Agreement also provided for mutual releases among the parties from and against all claims "of any kind relating to the [2000] Lawsuit or any compulsory counterclaim[.]" The Settlement Agreement contained a broadly worded arbitration clause requiring that "[a]ny and all claims, controversies, or disputes arising out of or relating to this Settlement Agreement, or the breach thereof, shall be fully and finally resolved by arbitration[.]"

Subsequently, the parties did not execute the sale of the sublease. In 2005, SS&M filed suit against SIBA, Island Works and Chock seeking transfer of the sublease and claiming breach of the Settlement Agreement, fraud, unfair and deceptive business practices, bad faith, and requesting declaratory judgment vacating a prior arbitration award (2005 Lawsuit).[2]

In November 2007, SS&M issued a demand for arbitration pursuant to the arbitration clause in the Settlement Agreement. This arbitration proceeding was designated DPR No. 07-0509-A and hearings were subsequently held in December 2009. The Arbitration Award was issued on April 28, 2010 and the Arbitrator's Clarifying Order was issued on May 19, 2010.

On June 16, 2010, SIBA filed a motion to confirm the Arbitration Decision, to which SS&M filed an opposition on August

---

[2] After the Settlement Agreement was entered, it appears that two other arbitration proceedings were held prior to the arbitration proceedings involved in this appeal. The issues in this appeal do not relate to the prior arbitration proceedings, but rather only those proceedings identified as DPR No. 07-0509-A.

3

3, 2010. On August 12, 2010, SS&M filed its motion to vacate the Arbitration Decision pursuant to HRS § 658A-23, and on August 30, 2010, SS&M filed a supplemental memorandum also based on HRS § 658A-23.

On March 10, 2011, the circuit court denied SS&M's motion to vacate and granted SIBA's motion to confirm the Arbitration Decision. On the same date, the circuit court also entered Judgment pursuant to the Arbitration Decision awarding *inter alia* possession of Lot 44 to SIBA, quantum meruit damages to SIBA from SS&M for loss of certain rental revenue during SS&M's occupation of Lot 44 (to be paid in part by funds deposited by SS&M in a rent trust fund previously established by the circuit court), and reasonable attorneys' fees and costs to SIBA. SS&M timely appealed.

## II. Standard of Review

"We review the circuit court's ruling on an arbitration award *de novo*, but we also are mindful that the circuit court's review of arbitral awards must be extremely narrow and exceedingly deferential." Tatibouet v. Ellsworth, 99 Hawai'i 226, 233, 54 P.3d 397, 404 (2002)(brackets and internal quotation marks omitted).

## III. Discussion

### A. Incompleteness of the Arbitration Decision

SS&M's first contention is that the Arbitration Decision should not have been confirmed because it was incomplete, arguing that it failed "to address the major material issue presented for adjudication, mostly and importantly the basic interpretation of the terms and conditions of the Settlement Agreement that distinguish and impose a two-tier level of responsibilities and performances upon the parties[.]" We find no merit in SS&M's argument.

Moreover, and significantly, SS&M's motion before the circuit court only sought to vacate the Arbitration Decision pursuant to HRS § 658A-23. "[A]n arbitration award can be vacated only on the six grounds specified in HRS § 658A-23(a)[.]"

4

Kona Vill. Realty, Inc. v. Sunstone Realty Partners, XIV, LLC, 121 Hawai'i 110, 113, 214 P.3d 1100, 1103 (App. 2009), aff'd 123 Hawai'i 476, 236 P.3d 456 (2010). Incompleteness is not one of the six enumerated grounds for vacating an arbitration award under HRS § 658A-23(a).[3]

## B. The Arbitrator Did Not Exceed His Authority

"The scope of an arbitrator's authority is determined by agreement of the parties. An arbitrator must act within the scope of the authority conferred upon him by the parties and cannot exceed his power by deciding matters not submitted." Clawson v. Habilitat, Inc., 71 Haw. 76, 78, 783 P.2d 1230, 1231 (1989). "The scope of an arbitration panel's authority is determined by the relevant agreement to arbitrate." Kona Vill. Realty, 121 Hawai'i at 113, 214 P.2d at 1103 (citing Hamada v. Westcott, 102 Hawai'i 210, 214, 74 P.3d 33, 37 (2003)). "Under Hawai'i law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." County of Hawai'i v. UNIDEV, LLC, 129 Hawai'i 378, 394, 301 P.3d 588, 604 (2013) (citation and internal quotation marks omitted).

"Judicial review is limited to cases in which the arbitrators *manifestly* exceed the agreement between the parties." Tatibouet, 99 Hawai'i at 234, 54 P.3d at 405 (emphasis added). An appellate court must determine if the arbitration award "draws its essence" from the arbitration agreement by looking "to the arbitration clause, the words of the contract, and the conduct of the parties." United Pub. Workers, AFSCME, Local 646, AFL-CIO v. City & Cnty. of Honolulu Holiday Pay, No. 29710, 2011 WL 2696394, at *6 (App. July 12, 2011)(internal quotation marks omitted).

"The burden of establishing grounds for vacating an arbitration award is on the party seeking it." See Ashley v. Hart, No. 28207, 125 Hawai'i 242, 257 P.3d 1219 (App. Feb. 25,

---

[3] Even assuming a party can ask a court to submit a claim back to the arbitrator to modify or correct an arbitration award that is not final and definite, see HRS § 658A-20(d), SS&M made no such request to the circuit court. Rather, SS&M only sought to vacate the award under HRS § 658A-23.

2011) (mem.) (quoting <u>United States Life Ins. Co. v. Superior Nat. Ins. Co.</u>, 591 F.3d 1167, 1173 (9th Cir. 2010)).

As best as can be discerned from its appellate briefs, SS&M asserts that the arbitrator exceeded the scope of his authority by making decisions on five issues: (1) requiring SS&M to pay rent to SIBA, which the arbitrator did on a quantum meruit basis; (2) dismissing Chock from the proceedings; (3) deeming SIBA's conduct reasonable; (4) awarding SIBA reasonable costs to remediate Lot 44; and (5) awarding SIBA attorney's fees and costs.

## 1. **Liability of the Parties**

The first four issues relate to the liability of the parties regarding Lot 44 and the long-standing dispute between the parties. The broadly worded arbitration clause in the Settlement Agreement provides for arbitration of "[a]ny and all claims, controversies, or disputes arising out of or relating to this Settlement Agreement, or the breach thereof[.]" The Settlement Agreement was entered to resolve all disputes relating to SIBA's 2000 Lawsuit against Island Softworks/Chock, in which SIBA sought to terminate the sublease and to divest Island Softworks/Chock and any party claiming through them of any interest in Lot 44. As specifically acknowledged in the Settlement Agreement, Chock and SS&M had entered into an agreement in April 1999 for SS&M to purchase the sublease. Thus, all of the disputes between SIBA, Island Softworks, Chock and SS&M regarding Lot 44 "arise out of" or "relate to" the Settlement Agreement. <u>See</u> UNIDEV, 129 Hawai'i at 395-96, 301 P.3d at 605-606 (holding that arbitration clauses providing for arbitration of any dispute "arising under" or "arising out of" an agreement should be construed broadly). Additionally, the arbitration clause provides for arbitration of any claim or dispute arising out of or related to the "breach" of the Settlement Agreement.

In sum, the long-standing dispute between the parties was based on the attempt by Chock to assign the sublease to SS&M,

which the parties sought to effect by way of the Settlement Agreement. Although assignment of the sublease was never completed, SS&M apparently had possession of Lot 44 for many years. Thus, the issues of SS&M's liability for payments to SIBA based on SS&M's possession of Lot 44, Chock's liability, whether or not SIBA's conduct was reasonable, and SS&M's obligation to pay reasonable costs to remediate the property are all issues *arising out of or relating to* the Settlement Agreement.

## 2. Attorneys' Fees and Costs

The award of attorneys' fees and costs are clearly within the scope of the arbitrator's authority. HRS § 658A-21(b) (Supp. 2012) provides two bases for the award of attorneys' fees in arbitration proceedings: "[a]n arbitrator may award reasonable attorney's fees and other reasonable expenses of arbitration if such an award is authorized by law in a civil action involving the same claim or *by the agreement of the parties to the arbitration proceeding.*" (Emphasis added).

The parties clearly agreed that the non-prevailing party would be responsible for attorneys' fees and costs of the prevailing party. The arbitration clause explicitly states, "[t]he non-prevailing party shall pay the attorneys' fees and costs of the prevailing party." Thus, the parties' agreement empowered the arbitrator to award attorneys' fees and costs under HRS § 658A-21(b). According to the Arbitration Award, SIBA was the prevailing party. Thus, the arbitrator did not exceed his authority by awarding SIBA attorneys' fees and costs.

## C. Confirmation as to Rent Trust Fund

SS&M's final contention is that the Arbitration Decision as it relates to the rent trust fund was not confirmable, apparently arguing that affecting the rent trust fund exceeded the arbitrator's authority. In this regard, SS&M essentially argues that because the arbitrator ultimately determined that SS&M was not in a landlord-tenant relationship with SIBA, and the circuit court had established the rent trust fund based on SS&M's claims to be a tenant, SIBA is not entitled

7

to the monies in the rent trust fund.

> [B]ecause of the legislative policy to encourage arbitration and thereby discourage litigation, <u>arbitrators have broad discretion in resolving the dispute</u>. Upon submission of an issue, the arbitrator has authority to determine the entire question, including the legal construction of terms of a contract or lease, as well as the disputed facts. In fact, <u>where the parties agree to arbitrate, they thereby assume all the hazards of the arbitration process, including the risk that the arbitrators may make mistakes in the application of law</u> and in their findings of fact.

<u>Schmidt v. Pac. Benefit Servs., Inc.</u>, 113 Hawai'i 161, 165, 150 P.3d 810, 814 (2006) (quoting <u>Daiichi Hawai'i Real Estate Corp. v. Lichter</u>, 103 Hawai'i 325, 336, 82 P.3d 411, 422 (2003)) (emphasis added). Although the issue is not clear, even if we were to assume (without deciding) that it was contrary to law that the rent trust fund be used to pay quantum meruit damages, it would not be a basis to vacate the Arbitration Decision.

## IV. Conclusion

Based on the foregoing, the order confirming the Arbitration Decision and the Judgment entered in the Circuit Court of the First Circuit on March 10, 2011 are affirmed.

DATED: Honolulu, Hawai'i, December 27, 2013.

On the briefs:

Gary Victor Dubin
Frederick J. Arensmeyer
(Dubin Law Offices)
for Plaintiff-Appellant

Lissa D. Shults
Bradley R. Tamm
(Shults & Tamm, ALC)
Edwin A. Ebisui, Jr.
for Defendant-Appellee
Sand Island Business Association

Chief Judge

Associate Judge

Associate Judge

8